## Bevan *against* Crooks.

Goods consigned to a commission merchant to be stored or sold are not subject to a distress for rent or execution for the debt of the consignee; but if he have not the character of a commission merchant, and it do not clearly appear on what terms or for what purpose the goods were consigned, the law is otherwise.

ERROR to the District Court of *Allegheny* county.

Trover for a ceroon of indigo. The case is fully stated in the opinion of the court.

*Williams,* for plaintiff in error, cited 17 *Serg. & Rawle* 138.

*M'Candless,* for defendant in error, cited 7 *Eng. Com. L.* 355; 3 *Bro. & Bing.* 75; 2 *Whart.* 308; 8 *Johns.* 452; 1 *Sto. Eq.* 369.

The opinion of the Court was delivered by

Huston, J.—This was an action of trover by James Crooks, to recover the value of a ceroon of indigo, which it was alleged he had sent to A. C. Bell to sell for him. Bell was the tenant of James Brown, and, being in arrear for his rent, a landlord's warrant issued, and this indigo, among other things, was distrained and in due form of law sold. At the trial it was admitted that Crooks had consigned to Bell four ceroons of indigo to sell for him. Three of these were proved to have been disposed of; one to Brown for a debt which Bell owed him; another had been bartered for coffee; and a third sold on credit, for which the purchaser's note had been given. When the officer came to distrain, A. C. Bell was not in the store, but the young men in his employment had a list of all the property taken on the previous day, as A. C. Bell had sold the whole establishment to his brother John Bell. A. C. Bell had published in a daily paper of that morning his sale to John, who was left in possession, and A. C. Bell had left the city—perhaps only for a few days. The officer proved that there were goods enough to have paid the rent without taking the indigo. Before his sale on the distress, the sheriff came with a *fieri facias* against A. C. & J. Bell; no notice was given that the indigo was not then in the same right as the other goods. A clerk, who had been four years in the store, proved that Bell kept a grocery store; this was his professed and ostensible business, though sometimes he acted as a commission merchant to sell flour and butter left with him; that he knew of no other consignment than this indigo, except country produce. He knew this indigo

had been consigned; that the indigo had been one of the articles sold to John and was in-the list; he had heard from A. C. Bell that an execution was coming; but never heard then or since that the sale was not a fair one; the payments were to be in 4, 8 and 12 months. Another witness, who drew the assignment, proved the same facts in substance, and the delivery of possession to John.

The court told the jury that the case of *Brown* v. *Sims* (17 *Serg. & Rawle* 198) must govern the decision. The cases are not alike; there the owner within five days took out his replevin; here, although A. C. Bell, if he was the factor, was bound to give notice to Crooks, he suffered the landlord to take this indigo and sell it without notice of the claim of Crooks. In that case, the plea was that the tenant was a commission merchant and factor, and rented the warehouse for that business; that the owners of the tobacco put it into the storehouse, paying storage. Here the tenant was a grocer, and never in four years had any consignment to him as factor except this indigo and some barrels of flour and kegs of butter brought to his store and left to be sold. There it did not appear the tenant had any power to sell or offered to sell the tobacco; here the tenant had sold or bartered three of the four ceroons of indigo, and this also was sold, fairly or unfairly. The cases are not alike. The decision was that a tenant who rented and occupied a warehouse expressly to receive and sell the goods of other persons, and who received the goods of another on storage, was not in such a situation that goods so received could be distrained for rent. There was error in saying that that case must govern this.

John Bell and A. C. Bell were not before the court; the fact that one brother sold his goods to the other for a price payable in instalments, was not evidence of fraud of itself; the fact that A. C. Bell knew of a judgment and feared an execution, was not in this case evidence of fraud, for as the judgment and the execution were against John as well as A. C. Bell, the sale did not and could not delay the creditor; so of the rent due; the sale did not obstruct the distress; the transfer was not secret, it was even published in a newspaper the next morning. There is no evidence that either of the Bells were insolvent; it is asserted that John is not, and A. C. Bell had real estate. There is no evidence of what authority A. C. Bell had as to this indigo; whether to sell for cash or on credit, and no evidence that the sale to John was not within his power, and was not as good for his principal as the other sales he had made.

As this case goes back, it can be made appear what the authority of A. C. Bell was, whether confined to selling the ceroon in bulk or by retail, and whether he had broken on this and retailed a part of it; how long it had been in his possession, and whether he had informed his principal of the other sales; whether John

knew of the title to it being different from that to the other goods; in short, the whole case may be more fully brought out and decided.

Judgment reversed, and *venire de novo* awarded.